No. 19-1139
*U.S. v. Mercedes*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of July, two thousand twenty-one.

PRESENT:
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges*,
> NICHOLAS G. GARAUFIS,
> > *District Judge.*\*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                                  No. 19-1139

LEIBYS MERCEDES, AKA CELLY, AKA SONNY,

> *Defendant-Appellant*,

CHRISTOPHER COLEMAN, AKA FOX, JONATHAN ACQUINO,
AKA JONATHAN AQUINO, AKA JONATHAN HARVEY-ACQUINO,
AKA GOTTI, JAMES ODELL WHITTED, AKA ODELL, AKA "O",
BRANDEN JONES, AKA BRANDEN MIMA, AKA MARLO,

_____

\* Judge Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation.

*Defendants.*[*]

_____

FOR DEFENDANT-APPELLANT:            Lawrence D. Gerzog, Law Offices of
                                    Lawrence D. Gerzog, New York, NY.

FOR APPELLEE:                       Thomas McKay, Assistant United States
                                    Attorney (Samuel L. Raymond, Daniel
                                    Loss, Michael D. Maimin, Assistant
                                    United States Attorneys, *on the brief*) *for*
                                    Audrey Strauss, United States Attorney for
                                    the Southern District of New York, New
                                    York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on June 7, 2019, is **AFFIRMED**.

Leibys Mercedes appeals from a judgment of conviction entered following a jury trial at which he was found guilty of conspiracy to possess with intent to distribute, and to distribute, 100 grams or more of heroin, *see* 21 U.S.C. §§ 841(b)(l)(B)(i), 846. The District Court sentenced Mercedes principally to an aggregate 180-month term of imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

Mercedes challenges the District Court's denial of his Rule 29 motion for a judgment of acquittal. Rule 29 permits a trial court to set aside a jury's guilty verdict if it determines the evidence is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a finding is warranted "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable

_____

[*] The Clerk of Court is directed to change the caption to the above.

doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999).[1] We review *de novo* a district court's denial of such a motion. *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015). On such review, we conclude that Rule 29 relief was correctly denied.

Trial evidence established that Mercedes and Christopher Coleman shared a room at the Bronx Community Reentry Center. Coleman referred to Mercedes as "Celly," reportedly a common term for "roommates" at the facility. App'x at 20, 23-24. Lisa Henderson, Coleman's girlfriend, testified that Coleman introduced Mercedes to her as "Celly." App'x at 43-44.  Henderson identified Mercedes as "Celly" to the jury during trial. She explained that "Celly" was Coleman's "plug"—or "drug supplier"—from the Bronx. *Id.* at 44-46.

Henderson further testified that Coleman purchased heroin from "Celly," and that she had accompanied Coleman on approximately three trips to the Bronx in which he conducted drug transactions with his "Bronx plug." *Id.* at 47. Henderson testified that, as they were driving to the Bronx on one such trip, Coleman told her that he was going to buy drugs. She estimated that he would bring "anywhere between" $8,000 and $10,000 with him for these transactions. *Id.* at 48. Henderson explained that during these trips, which normally occurred at night, Coleman would drive, and Henderson would ride along in the passenger seat. Coleman would park the car, and a second car would pull up alongside Coleman's vehicle on the driver's side. Henderson did not see the other driver during these meetings. Rather, Coleman would exit their car, enter the other double-parked car, and then Coleman and the other driver would "drive around the block and come back." *Id.* at 47. Henderson testified that, although she did not witness the hand-to-hand transactions and Coleman did not specifically tell her that he had purchased heroin, she understood that Coleman purchased heroin during these encounters.

The evidence at trial also included intercepted text messages, phone calls, and cell-site location data related to phone numbers associated with Mercedes and Coleman. This evidence revealed at least four specific instances in which Coleman corresponded with

---

[1]  Unless otherwise noted, in quoting caselaw, this Order omits all alterations, citations, footnotes, and internal quotation marks.

"Celly" to coordinate exchanges and payments.[2] For example, text messages viewed by the jury showed that while Mercedes was detained for violating the conditions of his supervised release, Coleman communicated with someone identifying himself as "Celly's brother" to make a partial payment to "Celly." *Id.* at 76-77. "Celly's" brother informed Coleman that "Celly" was in jail for violating probation.[3] Then, after Mercedes was released, Coleman called "Celly's" phone and spoke with "Celly" to arrange a payment. Coleman agreed to visit "Celly" to give him a "rack," a term used for $1,000. *Id.* at 17, 88. "Celly" told Coleman to call "Celly's" brother to let him know when Coleman arrived to make the payment. Later that day, Coleman called "Celly's" brother and said that he was "two minutes" away. *Id.* at 89.

In another set of communications, on May 23, 2017, also when Mercedes was no longer detained, Coleman texted "Celly" and told "Celly" that he was "[h]ere." *Id.* at 106. Contemporaneous cell site data showed that at that moment Coleman had arrived near Mercedes's home at 2344 Story Avenue in the Bronx. Just over half an hour later, Coleman sent "Celly" a text saying, "safe," to which "Celly" replied, "good." *Id.* at 107. Six days later, Coleman received a text asking, "is it working good." *Id.* at 95. Coleman replied, "Honestly, I didn't crack it yet because if it's the same then it will be fine." *Id.* Coleman said that work had "Bn slow" and that he was "doing what I already have" and wanted to "pay off what I'm doing." *Id.* at 95-96.

---

[2] On appeal, Mercedes posits that anyone could have used the phone numbers associated with him to correspond with Coleman. The evidence shows, however, that Coleman repeatedly identified the user of the cell phones as "Celly," and Henderson testified that Coleman referred to Mercedes, his heroin supplier from the Bronx, as "Celly." Viewing this evidence in the light most favorable to the jury's verdict of conviction, the evidence was sufficient for a reasonable jury to infer that the individual identified as "Celly" and using the phone numbers was, in fact, Mercedes. *See Cacace*, 796 F.3d at 191.

[3] "Celly's" brother's description of "Celly's" predicament matched Mercedes's legal situation at the time: On March 1, 2017, Mercedes was arrested in a white Chevy Impala with a gun in the car; on May 10, 2017, he was detained for a violation of supervised release; and, on May 15, 2017, Mercedes appeared in court for a violation of supervised release hearing in Newark, New Jersey, in Essex County, and was later released from custody. Two days later, Coleman spoke with "Celly," who said, "I came out yesterday in the morning." App'x at 83.

In a similar vein, on June 19, 2017, Coleman sent a text saying: "I have a couple bands for u if u want Celly." *Id.* at 97. "Celly" responded, "Hell yea [I'll] take that so I could pass it on." *Id.* at 98. Coleman requested that "Celly" come to Coleman's house to pick up the money. Coleman texted "Celly" his address. Coleman then called Jonathan Acquino (AKA "Gotti"), who, according to Henderson, sold heroin with Coleman, to ask for $100. Coleman explained that someone was "com[ing] through" and that "I told him I had a couple of racks for him. I'm at 1900." Appellee's Addendum at 1. Coleman also called an unknown individual for "advice" regarding whether there was anything "wrong with letting a plug come to the crib." *Id.* at 2. An hour after Coleman invited "Celly" to his home to pick up the payment, "Celly" texted Coleman that he was "[h]ere." App'x at 100.

Finally, on July 2, 2017, Coleman texted "Celly" to "come check me today." *Id.* at 101. The following day, "Celly" asked, "You want me to go now," and Coleman responded, "Sure." *Id.* at 102. Coleman wrote Acquino that "my man about to come see me." *Id.* at 92. Shortly thereafter, Coleman received a text announcing, "Here." *Id.* at 102. Coleman then called Acquino and told him: "My man just came to see me too. Just have me 25 right now." *Id.* at 93. Coleman texted Acquino that "relieved a lot of stress." *Id.*

Three days after the July 2 transaction, law enforcement officers arrested Coleman and Mercedes in their respective apartments. In Coleman's apartment, they found approximately 208 grams of heroin and narcotics paraphernalia. At $65 per gram, the value of the seized heroin was estimated to be around $13,520. When law enforcement arrested Mercedes, they found $13,530 in the pocket of one of his jackets hanging in a closet.

A motion for judgment of acquittal "does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Guadagna*, 183 F.3d at 129. Viewing this evidence in the light most favorable to the prosecution, as we are bound to do on appeal after a verdict of conviction, we easily conclude that the evidence was sufficient for the jury to find "the essential elements of the crime established beyond a reasonable doubt." *Cacace*, 796 F.3d at 191. A reasonable jury could infer that Mercedes was indeed "Celly" and that he conspired with Coleman, among others, to possess with intent to distribute, and to

distribute, 100 grams or more of heroin. Therefore, the District Court did not err when it denied Mercedes's motion for Rule 29 relief.

* * *

We have considered Mercedes's remaining arguments and find in them no basis for reversal. For the reasons set forth above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court